## Charles G. Frank, Defendant in Error, v. Orvice La Bounty et al., Plaintiffs in Error.

### Gen. No. 36,761.

Opinion filed May 2, 1934.

WISNER, DAVIS & WALSH, for plaintiffs in error.

HARRY A. BIOSSAT, for defendant in error.

MR. JUSTICE HEBEL delivered the opinion of the court.

The defendants filed a writ of error to review the record in a foreclosure proceeding wherein a decree was entered by the court after overruling the exceptions of the defendants to the master's report. From the record it appears that 'Charles G. Frank, as trustee, filed a bill of complaint to foreclose a trust deed securing the payment of a bond issue of $52,500.

A balance of $37,000 of said bonds has matured and remains unpaid, and is secured by the trust deed on an 18-apartment building located on the northwest corner of Woodlawn avenue and 46th street in Chicago. Orvice and Helen E. La Bounty signed, as makers, the bonds and trust deed. The defendants, Samuel T. Busey and Elsie T. Busey, the owners of the equity, did not sign the bonds and trust deed, nor the extension agreement of August 29, 1927, extending the maturity of the bonds aggregating $37,000, to September 1, 1932.

It appears from the evidence that about the time of maturity of the bonds there were negotiations for an extension of payment of the bonds by Samuel T. Busey and Charles G. Frank, the trustee named in the trust deed. These negotiations did not result in a signed agreement extending the maturity of the bonds. A foreclosure proceeding was filed on November 23, 1932, about three months after maturity of the bonds. The maturity of the bonds and default in payment are not in dispute.

The contention of the defendants is that the demand upon the trustee to institute foreclosure proceedings and the bondholders' agreement are void, as being opposed to public policy; that the trustee was not entitled to the compensation and expenses allowed by the decree, because of inequitable conduct.

The question is also raised that two of the defendants were not properly served by publication; that at the time of said publication they were residents of Cook county, Illinois.

Whether proper demand was made upon the trustee to foreclose is one of the questions in this case. Most of the $37,000 matured bonds are represented by a bondholders' committee and were deposited with C. G. Frank & Co. as depository. That fact of itself does not destroy the several rights to demand foreclosure.

The complaint seems to be that the trustee is in control of the bondholders' list, which places him in a position where his actions are governed by the amount of fees he may receive from the equity owners or the bondholders in case of foreclosure, and because of his interest he is not in a position to foreclose simply because the equity owners refused to pay $1,500 broker's commission for an extension of the loan.

The important question is: Did the bondholders do anything to embarrass an extension? Their several interests are involved. The bonds are due and unpaid. The equity owners did not offer to do equity, nor can the trustee by agreement, unless the bondholders consent, waive any of their respective rights. Their several rights are to have the amount due paid, and upon failure to satisfy the bondholders, they have the undoubted right to demand that the trustee proceed to institute foreclosure proceedings. The rule is that a trustee under a trust deed in the nature of a mortgage is a trustee for the equity owners as well as for the mortgagee and the bondholders, and in his attitude the trustee should be fair and impartial in his dealings with the parties in interest.

The question that seems to be uppermost in the minds of the defendants is the manner in which the trustee is alleged to have selected the bondholders' committee, the personnel of which it is claimed is in the control of the trustee. This court is still impressed with the fact that the bonds matured. Of this the defendants had knowledge, and no steps were taken by the defendants to do equity between the parties. What should the bondholders have done which in equity and good conscience they did not do? The agreement of the bondholders does not violate or require action which would violate public policy. There is no provision in the agreement that a depositing bondholder may not withdraw. The fact is that from the record the bondholders seemed to be satisfied. The

outstanding fact is that the defendants were unable to work out a plan for an extension of the maturity of the bonds satisfactory to the defendants. In a letter addressed to Samuel T. Busey, the trustee attempted to explain to the defendants that the maturity of the bonds could be extended for a period of three years from September 1, 1932, at the rate of four per cent per annum, with prepayments of $500 in 12 months and $500 in 18 months, $700 in 24 months, and $800 in 30 months, leaving a balance of $34,500 due in 36 months, and further, that a matured interest coupon in the sum of $1,110 be paid, and that $2,000 be paid on account of 1930 taxes and deposited with C. G. Frank & Co. to be used for the purposes indicated, and also to pay the costs necessary to extend the loan, including the attorney's fee of approximately $200, and it was also suggested by Mr. Frank that the charge for the services of C. G. Frank & Co. for the procuring of an extension would be $1,500. This offer was refused by an attorney for the defendant Busey. It was suggested at the time of the refusal that the defendants were willing to make payments on the mortgage, but that the amounts paid would have to be paid to a reputable bank; that the commission suggested was too high, and that they, the defendants would not pay it. It was further suggested by the attorney that Mr. Frank consider putting the property under corporation control, the bondholders to have preferred stock equal to the amount of their bonds and interest, and defendant Busey to hold the common stock. This counter offer was refused by Mr. Frank, and he advised the defendants' attorney that the only thing to do was to institute foreclosure proceedings.

It would seem that the defendants were disappointed in not being able to get what they wanted in the way of conditions under which the loan could be extended. It is unfortunate that the defendants were not able to pay the amount due the bondholders under the terms

of the trust deed. The bondholders however as a result of the default in payment are entitled to avail themselves of foreclosure proceedings.

We have examined the record, and it appears that the defendants McMackin and Manderville were defaulted by an order of court entered on March 13, 1933. Service was obtained by publication based upon an affidavit, and it appears from this affidavit that the last known places of residence of these defendants was McMackin, 4619 Woodlawn avenue, Chicago, and Manderville, 4613 Woodlawn avenue, Chicago, Illinois. The property sought to be foreclosed is known by these numbers, and each of the defendants occupied the premises as a tenant. There is some evidence in the record that the whereabouts of these defendants was uncertain. Manderville is not in court, and the question of proper service could only be raised by him. *Hinton v. Knott*, 134 Ill. App. 294. Ch. 22, sec. 12 of an act entitled ''Chancery'' (Cahill's Ill. Rev. Stats. 1933, ¶ 12 [App'x]) provides that whenever any complainant or his attorney shall file an affidavit (as was done in this case upon the grounds therein stated), the clerk shall cause publication to be made in a newspaper of general circulation. A summons was issued returnable to the February term, and section 13 of the same act provides that the notice required in section 12 may be given at any time after commencement of the suit.

The statutory provisions applicable herein were complied with, and the certificate of publication and the notice meet the requirements of sections 12 and 13 of the Chancery Act.

There being no error in the record, the decree entered herein is affirmed.

*Decree affirmed.*

HALL, P. J., and WILSON, J., concur.